| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Raffi Khatchadourian, Esq. - SBN 193165<br>Hemar, Rousso & Heald, LLP<br>15910 Ventura Boulevard, 12th Floor<br>Encino, CA 91436<br>Telephone: (818) 501-3800<br>Facsimile: (818) 501-2985<br>E-mail: raffi@hrhlaw.com<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* CASHMERE VALLEY BANK | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA** - SANTA ANA DIVISION

| In re: PACIFIC FOODS, INC. | CASE NO.: 8:18-14203-MW<br>CHAPTER: 7 |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362**<br>**(with supporting declarations)**<br>**(PERSONAL PROPERTY)** |
| Debtor(s). | DATE: December 17, 2018<br>TIME: 9:00 a.m.<br>COURTROOM: 6C |

**Movant:** CASHMERE VALLEY BANK

1. **Hearing Location:**

   ☐ 255 East Temple Street, Los Angeles, CA 90012        ☒ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367    ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (if any)(Responding Parties) , their attorneys (if any), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay, as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file a written response to this motion with the court and serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the hearing and appear at the hearing of this motion.

7.  ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (date) _____ and (time) _____ ; and, you may appear at the hearing.

a.  ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

b.  ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

c.  ☐ An application for order setting hearing on shortened notice and remains pending.  After the court has ruled on that application, you will be served with another notice or an order that will specify the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: 11/20/2018

Hemar, Rousso & Heald, LLP
Printed name of law firm (if applicable)

Raffi Khatchadourian, Esq.
Printed name of individual Movant or attorney for Movant

/s/ Raffi Khatchadourian

Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 2                                    F 4001-1.RFS.PP.MOTION

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO PERSONAL PROPERTY

1. Movant has a perfected security interest in the Property.

2. **The Property at Issue (Property):**

   a. ☒ Vehicle (*year, manufacturer, type, and model*):  Two 2018 Isuzu FTR Trucks with 30' body

      *Vehicle Identification Number:*  54DK6S166JSG00161 and 54DK6S168JSG00162
      *Location of vehicle (if known):*  In Debtor's possession

   b. ☐ Equipment (*manufacturer, type, and characteristics*):

      *Serial number(s):*

      *Location (if known):*

   c. ☐ Other Personal Property (*type, identifying information, and location*):

3. **Bankruptcy Case History:**

   a. ☒ A voluntary bankruptcy petition    ☐ An involuntary bankruptcy petition
      under chapter ☒ 7 ☐ 11 ☐ 12 ☐ 13  was filed on (*date*) 11/15/2018____ .

   b. ☐ An order to convert this case to chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13  was entered on (*date*) _____ .

   c. ☐ Plan was confirmed on (*date*) _____ .

4. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant the requested relief from stay as follows:

      (1) ☒ Movant's interest in the Property is not adequately protected.

         (A) ☒ Movant's interest in the Property is not protected by an adequate equity cushion.

         (B) ☒ The fair market value of the Property is declining and payments are not being made to Movant
            sufficient to protect Movant's interest against that decline.

         (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's
            obligation to insure the collateral under the terms of Movant's contract with Debtor.

         (D) ☐ Other (*see attached continuation page*).

      (2) ☐ The bankruptcy case was filed in bad faith.

         (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case
            commencement documents.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 3                          F 4001-1.RFS.PP.MOTION

(B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

(C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

(D) ☐ Other bankruptcy cases were filed in which an interest in the Property was asserted.

(E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

(3) ☐ (*Chapter 12 or 13 cases only*) All payments on account of the Property are being made through the plan and plan payments have not been made to the chapter 12 or chapter 13 trustee for payments due ☐ postpetition preconfirmation ☐ postpetition postconfirmation.

(4) ☐ The lease has matured, been rejected or deemed rejected by operation of law.

(5) ☐ The Debtor filed a statement of intention that indicates the Debtor intends to surrender the Property.

(6) ☐ Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition ☐ postpetition.

(7) ☐ For other cause for relief from stay, see attached continuation page.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to 11 U.S.C. § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

5. **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew that the bankruptcy petition had been filed and Movant would have been entitled to relief from stay to proceed with those actions,

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions,

c. ☐ Other (*specify*):

6. ☒ **Evidence in Support of Motion: *(Declaration(s) must be signed under penalty of perjury and attached to this motion)***

a. The PERSONAL PROPERTY DECLARATION on page 6 of this motion.

b. ☐ Supplemental declaration(s).

c. ☒ The statements made by the Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in the Debtor's case commencement documents. Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit(s) 4_____.

d. ☒ Other:  Equipment Finance Agreement attached as Exhibit 1; Certificates of Title attached as Exhibit 2; Certificate of Assignment attached as Exhibit 3

7. **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                          Page 4                                  **F 4001-1.RFS.PP.MOTION**

**Movant requests the following relief:**

1.   Relief from the stay is granted under:   [ X ]  11 U.S.C. § 362(d)(1)   [ X ]  11 U.S.C. § 362(d)(2)

2.   [ X ]   Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to repossess and sell the Property.

3.   [   ]   Confirmation that there is no stay in effect.

4.   [   ]   The stay is annulled retroactive to the petition date.  Any postpetition actions taken by Movant to enforce its remedies regarding the Property do not constitute a violation of the stay.

5.   [   ]   The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

6.   [ X ]   The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

7.   [   ]   The order is binding in any other bankruptcy case purporting to affect the Property filed not later than 2 years after the date of entry of such order, except that a debtor in a subsequent case may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

8.   [   ]   The order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

9.   [   ]   The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days, so that no further stay shall arise in that case as to the Property.

10.  [   ]   The order is binding and effective in any future bankruptcy case, no matter who the debtor may be
        [   ] without further notice, or  [   ] upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11.  [   ]   If relief from stay is not granted, the court orders adequate protection.

12.  [   ]   See continuation page for other relief requested


Date: 11/20/2018                    Hemar, Rousso & Heald, LLP
                                    Print name of law firm

                                    Raffi Khatchadourian, Esq.
                                    Print name of individual Movant or attorney for Movant


                                    /s/ Raffi Khatchadourian


                                    _____
                                    Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                          Page 5                          F 4001-1.RFS.PP.MOTION

# PERSONAL PROPERTY DECLARATION

I, (*name of declarant*) CHRIS EWER _____ , declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the Property (*specify*):

   a. ☐  I am the Movant.

   b. ☒  I am employed by Movant as (*title and capacity*):    Senior Vice President

   c. ☐  Other (*specify*):

2. a. ☒  I am one of the custodians of the books, records and files of Movant that pertain to loans, leases, or extensions of credit given to Debtor concerning the Property. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

   b. ☐  Other (see attached):

3. The Property is:

   a. ☒  Vehicle (*year, manufacturer, type, model and year*):  Two 2018 Isuzu FTR Trucks with 30' body

      *Vehicle Identification Number:*  54DK6S166JSG00161 and 54DK6S168JSG00162
      *Location of vehicle (if known):*  In Debtor's possession

   b. ☐  Equipment (*manufacturer, type, and characteristics*):

      *Serial number(s):*
      *Location (if known):*

   c. ☐  Other personal property (*type, identifying information, and location*):

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                        Page 6                        **F 4001-1.RFS.PP.MOTION**

4.  The nature of Debtor's interest in the Property is:

   a.  ☒ Sole owner

   b.  ☐ Co-owner (*specify*):

   c.  ☐ Lessee

   d.  ☐ Other (*specify*):

   e.  ☒ Debtor ☒ did ☐ did not  list the Property in the schedules filed in this case.
   ***Only one truck listed

5.  ☐ The lease matured or was rejected on (*date*) _____:

   a.  ☐ rejected

      (1) ☐ by operation of law.

      (2) ☐ by order of the court.

   b.  ☐ matured.

6.  Movant has a perfected security interest in the Property.

   a.  ☒ A true and correct copy of the promissory note or other document that evidences the debt owed by the Debtor to Movant is attached as Exhibit 1_____.

   b.  ☒ The Property is a motor vehicle, boat, or other personal property for which a certificate of title is provided for by state law.  True and correct copies of the following items are attached to this motion:

      (1) ☒ Certificate of title ("pink slip") (Exhibit 2_____).

      (2) ☐ Vehicle or other lease agreement (Exhibit _____).

      (3) ☒ Security agreement (Exhibit 1_____).

      (4) ☐ Other evidence of a security interest (Exhibit _____).

   c.  ☐ The Property is equipment, intangibles, or other personal property for which a certificate of title is not provided for by state law.  True and correct copies of the following items are attached to this motion:

      (1) ☐ Security agreement (Exhibit _____).

      (2) ☐ UCC-1 financing statement (Exhibit _____).

      (3) ☐ UCC financing statement search results (Exhibit _____).

      (4) ☐ Recorded or filed leases (Exhibit _____).

      (5) ☐ Other evidence of perfection of a security interest (Exhibit _____).

   d.  ☐ The Property is consumer goods.  True and correct copies of the following items are attached to this motion:

      (1) ☐ Credit application (Exhibit _____).

      (2) ☐ Purchase agreement (Exhibit _____).

      (3) ☐ Account statement showing payments made and balance due (Exhibit _____).

      (4) ☐ Other evidence of perfection of a security interest (*if necessary under state law*) (Exhibit _____).

   e.  ☐ Other liens against the Property are attached as Exhibit _____.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 7                                    **F 4001-1.RFS.PP.MOTION**

7.  Status of Movant's debt:

    a.  The amount of the monthly payment: $ <u>2,904.45</u> .

    b.  Number of payments that became due and were not tendered:  [2] prepetition  [ ] postpetition.

    c.  Total amount in arrears: $ <u>8,945.71</u> .

    d.  Last payment received on (date): <u>09/2018</u> .

    e.  Future payments due by the anticipated hearing date (if applicable): _____
        An additional payment of $ <u>4.45</u> will come due on (date) <u>12/10/2018</u> , and on
        the <u>10th</u> day of each month thereafter.  If the payment is not received by the <u>20th</u>
        day of the month, a late charge of $ <u>232.36</u> will be charged under the terms of the loan.

8.  [x] Attached as Exhibit <u>N/A</u> is a true and correct copy of a POSTPETITION payment history that accurately
    reflects the dates and amounts of all payments made by the Debtor since the petition date.

    No post-petition payments made

9.  Amount of Movant's debt:

    a.  Principal:................................................................................. $ <u>123,756.22</u>
    b.  Accrued interest:...................................................................... $ <u>1,202.17</u>
    c.  Costs (attorney's fees, late charges, other costs):.................. $ <u>232.36</u>
    d.  Advances (property taxes, insurance): .................................. $ _____
    e.  TOTAL CLAIM as of <u>11/20/2018</u> :.......................................$ <u>131,378.56</u>

10. [x] (Chapter 7 and 11 cases only) Valuation: The fair market value of the Property is: $ _____ .
    This valuation is based upon the following supporting evidence:

    a.  [ ] This is the value stated for property of this year, make, model, and general features in the reference guide
        most commonly used source for valuation data used by Movant in the ordinary course of its business for
        determining the value of this type of property.  True and correct copies of the relevant excerpts of the most
        recent edition of the reference guide are attached as Exhibit _____ .

    b.  [ ] This is the value determined by an appraisal or other expert evaluation.  True and correct copies of the
        expert's report and/or declaration are attached as Exhibit _____ .

    c.  [x] The Debtor's admissions in the Debtor's schedules filed in the case.  True and correct copies of the relevant
        portions of the Debtor's schedules are attached as Exhibit <u>4</u> .

    d.  [ ] Other basis for valuation (specify):

---

> **NOTE:** If valuation is contested, supplemental declarations providing additional foundation for the
> opinions of value should be submitted.

---

11. Calculation of equity in Property:

    a.  [x] **11 U.S.C. § 362(d)(1) - Equity Cushion:**

        I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s)
        senior to Movant's debt is $ <u>0</u> and is <u>0</u> % of the fair market value of the
        Property.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                    Page 8                    F 4001-1.RFS.PP.MOTION

b.  [X]  **11 U.S.C. § 362(d)(2)(A) - Equity**:

By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 10 above, I calculate that the Debtor's equity in the Property is $ _2,148.73_____ .

12.  [X]  The fair market value of the Property is declining because:
Continuing use and depreciation

13.  [  ]  The Debtor's intent is to surrender the Property.  A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____ .

14.  [  ]  Movant regained possession of the Property on (*date*) _____ , which is:  [  ] prepetition    [  ] postpetition.

15.  [  ]  (*Chapter 12 or 13 cases only*) Status of Movant's debt and other bankruptcy case information:

a.  The 341(a) meeting of creditors is currently scheduled for (or concluded on) (*date*) _____
A plan confirmation hearing is currently scheduled for (or concluded on) (*date*) _____
The plan was confirmed on (*if applicable*) (*date*) _____

b.  Postpetition preconfirmation payments due BUT REMAINING UNPAID after the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c.  Postconfirmation payments due BUT REMAINING UNPAID after the plan confirmation date (*if applicable*):

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d.  Postpetition advances or other charges due but unpaid:                          $
(*For details of type and amount, see Exhibit _____*)

e.  Attorneys' fees and costs:                                                                    $
(*For details of type and amount, see Exhibit _____*)

f.  Less suspense account or partial paid balance:                          $ [                    ]

TOTAL POSTPETITION DELINQUENCY:                          $

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                      Page 9                                      **F 4001-1.RFS.PP.MOTION**

g. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent. The plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

16. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with Debtor.

17. ☐ The bankruptcy case was filed in bad faith:

a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

d. ☐ Other (specify):


18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

b. ☐ Multiple bankruptcy cases affecting the Property:

(1) Case name: _____
Chapter: _____    Case number: _____
Date filed: _____    Date discharged: _____    Date dismissed: _____
Relief from stay regarding the Property ☐ was ☐ was not granted.

(2) Case name: _____
Chapter: _____    Case number: _____
Date filed: _____    Date discharged: _____    Date dismissed: _____
Relief from stay regarding the Property ☐ was ☐ was not granted.

(3) Case name: _____
Chapter: _____    Case number: _____
Date filed: _____    Date discharged: _____    Date dismissed: _____
Relief from stay regarding the Property ☐ was ☐ was not granted.

☐ See attached continuation page for more information about other bankruptcy cases affecting the Property.

☐ See attached continuation page for additional facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, and defraud creditors.

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                      Page 10                            F 4001-1.RFS.PP.MOTION

b. ☐ Although Movant knew the bankruptcy case was filed, Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit_____.

c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

11/20/18        CHRIS EWER
Date                 Printed Name                                          Signature

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
15910 Ventura Boulevard, 12th Floor
Encino, CA 91436

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (PERSONAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) 11/20/2018 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Trustee Jeffrey I. Golden, Esq.    lwerner@wgllp.com, jig@trustesolutions.net, kadele@wgllp.com, lfisk@wgllp.com

Debtor's Edmond Richard McGuire, Esq.    ermlawgroupcmecf@gmail.com, r60691@notify.bestcase.com, richard@ermlawgroup.com

United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (date) 11/20/2018 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor Pacific Foods, Inc., 3431 W. Carriage Drive, Santa Ana, CA 92704

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) 11/20/2018 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Served via Federal Express: Hon. Mark S. Wallace, U.S. Bankruptcy Court, 411 W. Fourth Street, Suite 6135, Santa Ana, CA 92701

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| | | */s/ Denise Pauff* |
| 11/20/2018 | DENISE PAUFF | |
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                     Page 12                          F 4001-1.RFS.PP.MOTION

# EQUIPMENT FINANCING AGREEMENT

| FULL LEGAL NAME of DEBTOR: **PACIFIC FOODS & DISTRIBUTION, INC.** | |
|---|---|
| PHYSICAL ADDRESS:  3431 W CARRIAGE DR | BILLING ADDRESS:  3431 W CARRIAGE DR |
| CITY:  SANTA ANA | CITY:  SANTA ANA |
| STATE:  California | STATE:  CA |
| ZIP CODE:  92694 | ZIP CODE:  92694 |

| FULL DESCRIPTION OF COLLATERAL INCLUDING MODEL AND SERIAL NUMBER |
|---|
| Two (2) New 2018 Isuzu FTR trucks with 30' body VINs 54DK6S166JSG00161 & 54DK6S168JSG00162 |

| COLLATERAL LOCATION (IF DIFFERENT FROM ABOVE): | | | |
|---|---|---|---|
| STREET ADDRESS: | CITY: | STATE: | ZIP CODE: |

## FINANCING STRUCTURE:

| TOTAL ADVANCE: | TERM OF LOAN: | PAYMENTS DUE: | SCHEDULED PAYMENT: | ADVANCE PAYMENTS: | INITIAL PAYMENT CHECK FOR THIS AMOUNT MUST ACCOMPANY AGREEMENT: |
|---|---|---|---|---|---|
| $153,919.36 | 60 Months | Monthly | $2,904.45 | $0.00 | $250.00 <br><br> INCLUDES DOC FEE OF $250.00 AND MISC. OTHER FEE OF $0.00 |

## TERMS OF EQUIPMENT FINANCING AGREEMENT

Debtor and Creditor agree as follows:

1. SECURITY INTEREST; AUTHORIZATION. Debtor hereby grants Creditor a security interest in the personal property described above, (collectively, together with all repair and replacement parts, additions, substitutions, accessories, and accessions, the "Collateral" and individually an "Item" or "Item of Collateral") to secure performance by Debtor of its obligations hereunder (the "Agreement") and under any other present or future agreement with Creditor (collectively, the "Obligations"). Debtor shall insure that such security interest is and shall remain a sole first lien security interest in the Collateral. Debtor authorizes Creditor to file a financing statement describing the Collateral from time to time in any Uniform Commercial Code ("UCC") filing office. Debtor agrees to pay all costs of preparing and filing any such financing statement.

2. PAYMENTS. Debtor shall repay Creditor the above "Total Advance" together with interest through periodic payments in the amounts set forth above. The scheduled payment due date will be established by the Creditor and communicated to the Debtor following Creditor's execution of this Agreement. Subsequent payments shall be due on the same day of each period thereafter until paid. All other amounts due hereunder shall be due upon

Debtor's receipt of Creditor's invoice therefore. Advance payments shall be applied to the last installment payments in reverse order until exhausted;

provided that if there is a default, any payments under this agreement may be applied to the Obligations in such order as Creditor chooses. In the event that Debtor requests, and Creditor agrees to allow Debtor to pay all or part of the amounts due hereunder prior to maturity, Debtor shall pay to Creditor an early termination service charge equal to five percent (5%) of the principal amount being prepaid, in addition to all other charges which have accrued up until the date the obligation is paid.

3. NO AGENCY. DEBTOR ACKNOWLEDGES THAT NO SUPPLIER OF AN ITEM OR INTERMEDIARY NOR ANY AGENT OF EITHER IS AN AGENT OF CREDITOR AND FURTHER THAT NONE OF SUCH PARTIES IS AUTHORIZED TO WAIVE OR ALTER ANY TERM OR CONDITION OF THIS AGREEMENT. NO REPRESENTATION AS TO ANY MATTER BY ANY SUCH PARTY SHALL BIND CREDITOR OR AFFECT DEBTOR'S DUTY TO PAY THE INSTALLMENT PAYMENTS AND PERFORM ITS OTHER OBLIGATIONS HEREUNDER.

4. NON CANCELLABLE AGREEMENT; PREPAYMENT; NO OFFSET. THIS AGREEMENT IS NON CANCELLABLE BY DEBTOR FOR ANY REASON WHATSOEVER. DEBTOR MAY PREPAY THE INSTALLMENT PAYMENTS ONLY IN ACCORDANCE HEREWITH. ALL PAYMENTS HEREUNDER ARE TO BE MADE WITHOUT OFFSET.

EXHIBIT \_\_\_, Page \_\_\_ of \_\_\_  Initial 

5. FINANCING. THIS AGREEMENT IS SOLELY A FINANCING AGREEMENT. CREDITOR HAS HAD NO INVOLVEMENT IN THE SELECTION OR PURCHASE OF AND HAS MADE AND HEREBY MAKES NO AGREEMENT, REPRESENTATION OR WARRANTY AS TO ANY ITEM OF COLLATERAL.

6. LOCATION; INSPECTION; USE. Debtor shall keep an Item, which is movable, permanently garaged, and shall not remove it from the United States. Debtor shall not remove any Item of stationary Collateral from the Collateral Location shown above without the prior written consent of Creditor. Upon request, Debtor shall advise Creditor of the exact location of an Item of movable Collateral. Creditor may inspect the Collateral during normal business hours and enter the premises where the Collateral may be located for such purposes. Each Item of Collateral shall be used solely in the conduct of Debtor's business and Debtor warrants that Collateral will be used solely for commercial or business purposes and not for consumer, personal, home or family purposes. The Collateral shall be operated in a careful and proper manner and in compliance with all laws, applicable governmental requirements, all requirements of insurance policies carried hereunder and all manufacturers' instructions and warranty requirements. Debtor shall not use, and shall prohibit use of, any portion of the Collateral in any way that violates federal, state, or local law, including, without limitation, the unlawful possession, storage, manufacture, advertisement, or sale of any Schedule I substance under the federal Controlled Substances Act, 21 U.S.C. Section 801 et seq., including, without limitation, cannabis, even if such possession, storage, manufacture, advertisement, or sale of cannabis is for medicinal purposes or is lawful under state or local law.

7. ALTERATIONS; SECURITY INTEREST COVERAGE. Without Creditor's prior written consent, Debtor shall not make any alterations, additions or improvements to an Item of Collateral, which detracts from its economic value or functional utility. All additions and improvements made to an Item shall be deemed accessions thereto, and shall not be removed if removal would impair the Item's economic value or functional utility. Creditor's security interest shall cover all modifications, accessions, additions to and replacements and substitutions for the Collateral. Debtor will not make any replacements or substitutions without Creditor's prior written consent.

8. MAINTENANCE. Debtor shall maintain the Collateral in good repair, condition and working order. Debtor shall cause all repairs required to maintain the Collateral in such condition to be made promptly by qualified parties. Debtor will cause each Item of Collateral for which a service contract is generally available to be covered by such a contract which provides coverages typical as to property of the type involved and is issued by a competent servicing entity.

9. LOSS AND DAMAGE; CASUALTY VALUE. In the event of loss, theft, destruction or requisition of or damage to an Item of Collateral from any cause, Debtor shall give Creditor prompt notice thereof and shall thereafter place the Item in good repair, condition and working order; provided, however, that if such Item is determined by Creditor to be lost, stolen, destroyed or damaged beyond repair or is requisitioned or suffers a constructive total loss under an insurance policy carried hereunder Debtor shall pay Creditor the "Casualty Value" of such Item which shall equal (a) any amounts due at the time of such payment and (b) each future installment due with respect to such Item discounted at three percent (3%) per annum simple interest from the date due to the date of such payment.

10. TITLING. Debtor shall cause an Item of Collateral subject to title registrations laws to be titled as directed by Creditor. Debtor shall advise Creditor promptly as to any necessary re-titling. Debtor shall cause all documents of title to be furnished to Creditor within sixty (60) days of the date of any titling effected by Debtor.

11. TAXES. Debtor shall when due pay and make filings with respect to all taxes, fees, including registrations, fines, penalties and other governmental assessments based on the ownership or use of the Collateral and shall pay as directed by Creditor or reimburse Creditor for all other governmental assessments (including gross receipts taxes but exclusive of Federal and State taxes based on Creditor's net income) related to amounts due hereunder, the Collateral or otherwise related hereto. Filings with respect to such other assessments shall, at Creditor's option, be made by Creditor or by Debtor as directed by Creditor.

12. INSURANCE. Debtor shall maintain and provide Creditor evidence satisfactory to Creditor of the maintenance of all risk insurance against loss of or damage to the Collateral for not less than the full replacement value thereof naming Creditor as Loss Payee. Such insurance shall be in a form and with companies approved by Creditor, shall provide at least thirty (30) days advance written notice to Creditor of material change or cancellation, shall provide full breach of warranty protection, if appropriate, and shall provide that the coverage is "primary." In the event of an assignment of this agreement of which Debtor receives notice, Debtor shall cause such insurance to provide the same protection to the assignee as its interests may appear. The proceeds of such insurance, at the option of the Creditor, shall be applied towards (a) the repair or replacement of the appropriate Item or Items of Collateral, (b) payment of the Casualty Value thereof or (c) payment of any other accrued obligations of Debtor hereunder. Any excess of such proceeds remaining shall belong to Debtor. Debtor shall provide the Creditor with public liability and property damage coverage applicable to the Collateral in such amounts and in such forms as Creditor shall reasonably require.

13. CREDITOR'S PAYMENT. If Debtor fails to perform any of its obligations hereunder, Creditor may perform such obligation, and Debtor shall (a) reimburse Creditor the cost of such performance and, (b) Creditor may add such amounts to the principal amount due and (c) pay creditor the service charge contemplated in paragraph 22. The Creditor shall have no obligation to the Debtor to perform any of the Debtor's obligations or make any expenditures, nor shall the undertaking thereof be construed as the waiver or cure of any Default or Event of Default.

14. INDEMNITY. Debtor shall indemnify, defend and hold Creditor harmless against any claim, action, liability or expense, including attorney's fees and court costs, incurred by Creditor related to this agreement. While it is not anticipated that Creditor shall have any liability for torts related to the Collateral, this indemnity covers tort proceedings including any strict liability claim, any claim under another theory related to latent or other defects and any patent, trademark or service mark infringement claim. This indemnity shall survive termination of this Agreement.

15. DEFAULT. Any of the following constitutes an event of default hereunder: (a) Debtor's failure to pay any amount hereunder when due; (b) Debtor's default in performing any other obligation hereunder or under any agreement between Debtor and Creditor; (c) death or judicial declaration of incompetency of Debtor, if an individual; (d) the filing by or against Debtor of a petition under the Bankruptcy Code or under any other insolvency law or law providing for the relief of debtors, including, without limitation, a petition for reorganization, agreement or extension; (e) the making of an assignment by Debtor for the benefit of creditors, appointment of a receiver or trustee for Debtor or for any Debtor's assets, institution by or against Debtor of any other type of insolvency proceeding or other proceeding contemplating settlement claims against or winding up of the affairs of Debtor, Debtor's cessation of active business affairs or the making by Debtor of a transfer of a material portion of Debtor's assets or inventory not in the ordinary course of business; (f) the occurrence of an event described in (c), (d) or (e) as to a guarantor or other surety of Debtor's obligations hereunder, (g) any misrepresentation of a material fact or representation in connection herewith by or on behalf of Debtor; (h) Debtor changes its name, state of incorporation, chief executive office and/or its place of residence without providing Creditor with 30 days advance written notice of such change; (i) Debtor's default under an Agreement or agreement providing financial accommodation with a third party or (j) Creditor shall in good faith deem itself insecure as a result of a material adverse change in Debtor's financial condition or otherwise.

16. REMEDIES. Upon the occurrence of an event of default, Creditor shall have the rights and remedies of a secured party, and Debtor shall have the rights and duties of a Debtor, under the UCC and in connection therewith Creditor may: (a) declare the Casualty Value, plus a charge equal to five percent (5%) of the Casualty Value, to be immediately due and payable with respect to all Items of Collateral without notice or demand to Debtor; (b) take possession of or, if deemed appropriate, render unusable any or all Items of Collateral, without demand or notice, wherever located, without any process of law and without liability for any damages occasioned by such taking of possession including damages to contents; (c) require Debtor to assemble any or all Items of Collateral at a location in reasonable proximity to their designated location hereunder; (d) sell or otherwise dispose of any Items of Collateral, whether or not in Creditor's possession, at public or private sale and apply the net proceeds of such sale after deducting all costs of such sale,

EXHIBIT 1, Page 14 of 29    Initial

including, but not limited to, costs of transportation, repossession, storage, refurbishing, advertising and brokers fees, to the Obligations with Debtor remaining liable for any deficiency, or (c) utilize any other remedy available under the UCC or otherwise to Creditor. Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, the Creditor shall give to the Debtor at least five Business Days prior written notice of the time and place of any public sale of Collateral or of the time after which any private sale or any other intended disposition is to be made. The Debtor hereby acknowledges that five Business Days prior written notice of such sale or sales shall be reasonable notice. All remedies are cumulative and Creditor may become the purchaser at any foreclosure sale.

17. STANDARDS FOR EXERCISING RIGHTS AND REMEDIES. To the extent that applicable law imposes duties on the Creditor to exercise remedies in a commercially reasonable manner, the Debtor acknowledges and agrees that it is not commercially unreasonable for the Creditor (a) to fail to incur expenses reasonably deemed significant by the Creditor to prepare Collateral for disposition, (b) to fail to obtain third-party consents for access to Collateral to be disposed of, (c) to advertise dispositions of Collateral through publications or media of general circulation, whether or not the Collateral is of a specialized nature, (d) to contact other persons, whether or not in the same business as the Debtor, for expressions of interest in acquiring all or any portion of the Collateral, (e) to hire one or more professional auctioneers to assist in the disposition of Collateral, whether or not the collateral is of a specialized nature, (f) to dispose of Collateral by utilizing Internet sites that provide for the auction of assets of the types included in the Collateral or that have the reasonable capability of doing so, or that match buyers and sellers of assets, (g) to dispose of assets in wholesale rather than retail markets, and (h) to disclaim disposition warranties. The Debtor acknowledges that the purpose of this Section 17 is to provide non-exhaustive indications of what actions or omissions by the Creditor would fulfill the Creditor's duties under the UCC or other applicable law and shall not be construed to grant any rights to the Debtor or to impose any duties on the Creditor that would not have been granted or imposed by applicable law in the absence of this Section 17.

18. LITIGATION EXPENSES. Debtor shall pay Creditor its costs and expenses, including repossession and attorneys' fees and court costs, incurred by Creditor in enforcing this Agreement. This obligation includes the payment of such amounts whether an action is filed and whether an action, which is filed, is dismissed.

19. ASSIGNMENT. Without the prior written consent of Creditor, Debtor shall not sell, or transfer the Collateral or create or allow any lien other than Creditor's security interest against an Item of Collateral or assign any of Debtor's obligations hereunder. Creditor may assign, pledge or otherwise transfer any of its rights hereunder to anyone ("Assignee") without notice to Debtor. If Debtor is given notice of any such assignment, Debtor shall thereafter pay any amounts due hereunder as directed in the notice. The rights of an Assignee to amounts due hereunder shall be free of any claim or defense Debtor may have against Creditor, and Debtor agrees not to assert against an Assignee any claim or defense, which Debtor may have against Creditor. DEBTOR ACKNOWLEDGES THAT ALL OR A PORTION OF THE CREDITOR'S RIGHTS HEREUNDER MAY BE ASSIGNED TO CASHMERE VALLEY BANK, A WASHINGTON CORPORATION. Subject to the foregoing, this agreement inures to the benefit of, and is binding upon, the heirs, legatees, personal representatives, successors and assigns of the parties.

20. PROPERTY. As between the parties, the Collateral shall at all times be deemed Personalty. Debtor will provide Creditor any real property waivers requested by Creditor as to the real property where an Item of Collateral is or is to be located.

21. REPRESENTATIONS. Debtor represents that its exact legal name, state of incorporation, location of its chief executive office and/or its place of residence, as applicable, have been correctly identified to Creditor.

22. LATE PAYMENT. If Creditor does not receive any payment required by this Agreement within ten (10) days of the due date thereof, or such greater time period as required by applicable law, Debtor shall pay to Creditor, as a charge for servicing of a delinquent account and not as a penalty, a charge of eight percent (8%) of the amount due, or such lesser amount equal to the

maximum allowable under applicable law for such charges. In addition to the foregoing service charge, Debtor shall pay to Creditor a $25.00 NSF fee with respect to any payment, which is returned due to Non-Sufficient Funds. In addition, Debtor shall pay to Creditor any actual additional expenses incurred by Creditor in collection efforts, including but not limited to long-distance telephone charges and travel expenses. Debtor shall pay to Creditor interest on any delinquent payment or amount due under this Agreement from the due date thereof until paid, at the lesser of the maximum rate of interest allowed by law or 21% per annum.

23. COMPLIANCE WITH LAW. Debtor and Creditor intend to comply with all applicable laws. If it is determined that payments under this Equipment Finance Agreement result in an interest payment higher than that allowed by applicable law, then any excess interest collected will be applied to the repayment of principal and interest will be charged at the rate allowed by law.

24. ADDITIONAL DOCUMENTS. Debtor shall provide to Creditor any documents, as Creditor shall reasonably request to protect Creditor's interest in the collateral. Debtor further shall furnish Creditor (a) a fiscal year end financial statement including balance sheet and profit and loss statement within one hundred twenty (120) days of the close of each fiscal year and (b) such other information and documents not specifically mentioned herein relative to this agreement as Creditor may request. Debtor shall reimburse Creditor for all search and filing fees incurred by Creditor related hereto.

25. COUNTERPARTS, ELECTRONIC SIGNATURES AND DOCUMENTS. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same Agreement. The counterparts of this Agreement and all related documents may be executed by manual or electronic signature by any of the parties and electronically delivered to any other party and the receiving party may rely on the receipt of such document so executed and delivered by electronic means as if the original had been received. Secured Party may store an electronic image of an electronically transmitted document marked as the original in which case an electronic image shall deemed to be the authoritative copy of electronic chattel paper. Secured Party or its assignee may create an electronic image of this Agreement and any or all of the related documents and may store the electronic image of such documents in an electronic form marked as the original and then destroy the paper "wet ink" original in which case an electronic image shall deemed to be the authoritative copy of electronic chattel paper.

26. NOTICES. Any notices required by this Security Agreement or the UCC shall be deemed to be delivered when properly directed to the intended recipient and has been (a) deposited with the United States Postal Service, (b) transmitted by facsimile, (c) transmitted through the internet, or (d) has been personally delivered.

27. GENERAL. This Agreement constitutes the entire agreement of the parties as to the subject matter and shall not be amended, altered or changed except by a written agreement signed by the parties. The forbearance on the part of Creditor to exercise any right or remedy available hereunder in the event of Debtor's default, or Creditor's failure to demand punctual performance or any obligation of Debtor shall not be deemed a waiver (x) of any such right or remedy, or (y) the requirement of punctual performance, or (z) of any subsequent breach or default on the part of Debtor. Whenever the context of this Agreement requires, the neuter includes the masculine or feminine and the singular includes the plural. If there is more than one Debtor named in this Agreement, the liability of each shall be joint and several. THIS AGREEMENT SHALL BE GOVERNED BY THE LAW OF THE STATE OF WASHINGTON. JURISDICTION AND VENUE FOR ANY ACTION RELATED TO THIS AGREEMENT SHALL BE IN AN APPROPRIATE COURT LOCATED IN CHELAN COUNTY, WASHINGTON, OR IN A STATE OR FEDERAL COURT IN ANOTHER JURISDICTION SELECTED BY CREDITOR WHICH HAS JURISDICTION OVER THE PARTIES. DEBTOR WAIVES THE RIGHT OF JURY TRIAL. Any provision declared invalid shall be deemed severable from the remaining provisions, which shall remain in full force and effect. Time is of the essence of this agreement. The obligations of Debtor shall survive the release of the security interest in the Collateral.



28. DEBTOR'S WARRANTIES. DEBTOR CERTIFIES AND WARRANTS: (a) THE FINANCIAL AND OTHER INFORMATION WHICH DEBTOR HAS SUBMITTED, OR WILL SUBMIT, TO CREDITOR IN CONNECTION WITH THIS AGREEMENT IS, OR SHALL BE AT TIME OF SUBMISSION, TRUE AND COMPLETE; (b) THIS AGREEMENT HAS BEEN DULY AUTHORIZED BY DEBTOR AND UPON EXECUTION BY DEBTOR SHALL CONSTITUTE THE LEGAL, VALID AND BINDING OBLIGATION, CONTRACT AND AGREEMENT OF DEBTOR ENFORCEABLE AGAINST DEBTOR IN ACCORDANCE WITH ITS

TERMS; AND (c) EACH SHOWING PROVIDED BY DEBTOR IN CONNECTION HEREWITH MAY BE FULLY RELIED UPON BY CREDITOR NOTWITHSTANDING ANY TECHNICAL DEFICIENCY IN ATTESTATION OR OTHERWISE. THE PERSON EXECUTING THIS AGREEMENT ON BEHALF OF DEBTOR WARRANTS THAT PERSON'S DUE AUTHORITY TO DO SO. DEBTOR FURTHER WARRANTS THAT EACH ITEM OF COLLATERAL SHALL AT THE TIME CREDITOR FUNDS THE TOTAL ADVANCE BE OWNED BY DEBTOR FREE AND CLEAR OF LIENS OR ENCUMBRANCES AND BE IN GOOD CONDITION AND WORKING ORDER.

STATUTORY NOTICE: ORAL AGREEMENTS OF ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.

DEBTOR HAS READ AND APPROVED ALL PAGES COMPRISING THIS EQUIPMENT FINANCING AGREEMENT AND BASED UPON SUCH REVIEW HAS ENTERED IN THIS EQUIPMENT FINANCING AGREEMENT WITH A COMPLETE UNDERSTANDING OF ITS TERMS.

| (CREDITOR) | (DEBTOR) |
|---|---|
| RWC International, LTD<br>13123 48th Ave S.<br>Seattle, Washington 98168 | PACIFIC FOODS & DISTRIBUTION, INC.<br>(PRINT FULL LEGAL NAME OF DEBTOR ABOVE)<br>By:<br>JAMES H LOFTUS, JR.  President |
| Accepted By: | By: |
| Date:     08/08/2017 | Date:     08/08/2017 |

We verify certain information about debtors and guarantors in accordance with the US Patriot Act while processing before accepting the agreement.

**CERTIFIED COPY OF RESOLUTION OF BUSINESS ENTITY FOR BORROWING FROM AND
OTHERWISE DEALING WITH RWC International, LTD**

The undersigned secretary/authorized recorder of <u>PACIFIC FOODS & DISTRIBUTION, INC.</u> ("Business Entity") does hereby certify that the following is a true and correct copy of resolutions duly adopted by the governing body of the Business Entity and that said resolutions are now in full force and effect.

RESOLVED that any one of the officers, general partners, members, managers or agents (hereinafter individually referred to as an "Authorized Person" and collectively, as the "Authorized Persons") listed below are authorized to take the following actions in the name of and on behalf of the Business Entity.

To finance through <u>RWC International, LTD</u> ("Secured Party") such equipment or other personal property on such terms as said Authorized Persons deem advisable and in the best interest of the Business Entity from time to time and the execution of any Equipment Finance Agreements by any one of said Authorized Persons shall be conclusive evidence of his/her approval thereof.

To sign and deliver all Equipment Finance Agreements and related documents, including any notes or other evidences of indebtedness as may be requested by the Secured Party

To pledge as collateral security for the performance of the obligations of the Business Entity to the Secured Party, such assets of the corporation as may be required and agreed upon between the Authorized Persons and the Secured Party.

RESOLVED FURTHER that, except as indicated above, each one of the Authorized Persons listed below is conferred with a general authority to deal on behalf of and in the name of the Business Entity with the Secured Party.

RESOLVED FURTHER that the following are the true and correct signatures and designations of the Officers referred to:

| NAMES | SIGNATURES | TITLES |
|---|---|---|
| JAMES H LOFTUS, JR. | | President |

RESOLVED FURTHER that this resolution shall continue in force until notice in writing of its revocation shall be given to and received by the Secured Party at [13123 48th Ave S. Seattle, Washington 98168], by certified mail, return receipt requested and notwithstanding the giving of such notice, this resolution shall be effective as to all agreements entered into prior to Secured Party's receipt of such notice.

RESOLVED FURTHER that the secretary/authorized recorder of the Business Entity be and hereby is authorized to furnish this certificate of authority to the Secured Party and that a copy of this certificate shall be conclusive evidence of the authority of the Authorized Persons to deal with the Secured Party on behalf of the Business Entity.

Type of Business Entity: **Corporation**

DATE : 08/08/2017

Signature

JAMES H. LOFTUS JR

(Print Name) Secretary/Authorized Recorder

Signed and sealed (if necessary) with seal of the Business Entity

## ACCEPTANCE CERTIFICATE

This has reference to the Equipment Financing Agreement dated 08/08/2017 ("Agreement") between RWC International LTD as Creditor, and the undersigned, as Debtor. The terms used herein, which are defined in the Agreement, shall have the same meanings as are provided therefore in the Agreement.

Debtor hereby represents, warrants and confirms to Creditor that the Equipment described below has been duly delivered to Debtor at the premises referred to in the Agreement and that Debtor has duly inspected the Equipment and that Debtor hereby accepts the Equipment for all purposes of the Agreement as being in accordance with specifications, properly installed and/or assembled, in good working order, repair and appearance and without defect or inherent vice in condition, design, operation, or fitness for use, whether or not discoverable by Debtor as of the date, provided, however, that nothing contained herein or in the Agreement shall in any way diminish or otherwise affect any right Debtor or Creditor may have with respect to the Equipment against the seller or any manufacturer of the Equipment or any part thereof.

CREDITOR MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING, BUT NOT LIMITED TO: THE CONDITION, DESIGN, OR QUALITY OF THE EQUIPMENT; THE FITNESS OF THE EQUIPMENT FOR USE OR FOR A PARTICULAR PURPOSE; THE MERCHANTABILITY OF THE EQUIPMENT; COMPLIANCE OF THE EQUIPMENT WITH THE REQUIREMENTS OF ANY LAWS, RULES, SPECIFICATIONS OR CONTRACTS PERTAINING THERETO; PATENT INFRINGEMENT; OR LATENT DEFECTS; THE QUALITY OF THE MATERIAL OR WORKMANSHIP OF THE EQUIPMENT OR THE CONFORMITY OF THE EQUIPMENT TO THE PROVISIONS AND SPECIFICATIONS OF ANY PURCHASE ORDER RELATING THERETO; THE OPERATION, USE, OR PERFORMANCE OF THE EQUIPMENT; OR ANY OTHER REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO THE EQUIPMENT. NO DEFECT OR UNFITNESS OF THE EQUIPMENT SHALL RELIEVE DEBTOR OF THE OBLIGATION TO PAY RENT OR OF ANY OBLIGATION UNDER THIS AGREEMENT. THE DEBTOR ALSO ACKNOWLEDGES THAT THE CREDITOR HAS MADE NO REPRESENTATION OR WARRANTY OF ANY KIND, NATURE OR DESCRIPTION, EXPRESS OR IMPLIED, WITH RESPECT TO THE OPERATION, USE OR PERFORMANCE OF THE EQUIPMENT.

CREDITOR HEREBY AFFIRMS AND AGREES THAT THEY ARE IN RECEIPT OF A COPY OF ALL MANUFACTURER AND/OR MERCHANT WARRANTIES.

CREDITOR SHALL HAVE NO LIABILITY TO DEBTOR OR ANY PERSON WHOMSOEVER FOR ANY CLAIM, LOSS, DAMAGE, OR EXPENSE (INCLUDING ATTORNEY FEES) OF ANY KIND OR NATURE, WHETHER SPECIAL, CONSEQUENTIAL, ECONOMIC OR OTHERWISE, CAUSED OR ALLEGED TO BE CAUSED DIRECTLY, INDIRECTLY, INCIDENTALLY OR CONSEQUENTIALLY BY THE EQUIPMENT OR ANY PART THEREOF OR PRODUCTS THEREFROM, BY ANY INADEQUACY OF THE EQUIPMENT OR DEFECT OR DEFICIENCY THEREIN, BY ANY INCIDENT WHATSOEVER ARISING IN STRICT LIABILITY OR OTHERWISE FROM CREDITOR'S OR DEBTOR'S NEGLIGENCE OR OTHERWISE, BY THE USE OR MAINTENANCE THEREOF, OR FOR REPAIR, SERVICING OR ADJUSTMENT THERETO, OR FOR ANY INTERRUPTION OF SERVICE OR LOSS OF USE OF THE EQUIPMENT, OR FOR ANY LOSS OF BUSINESS OR DAMAGE WHATSOEVER, AND HOWSOEVER CAUSED, OR ARISING OUT OF THIS AGREEMENT, DEBTOR SHALL INDEMNIFY AND HOLD HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS, COSTS, EXPENSES, DAMAGES, LOSSES, LIABILITIES INCURRED OR SUFFERED BY THE CREDITOR, DEBTOR OR ANY OTHER PARTY IN CONNECTION WITH THE DELIVERY, OPERATION, USE OR PERFORMANCE OF THE EQUIPMENT, OR AS A RESULT OF ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES (INCLUDING STRICT LIABILITY IN TORT). FURTHER, DEBTOR UNDERSTANDS AND AGREES THAT THERE SHALL BE NO ABATEMENT OF RENT DURING ANY PERIOD OF BREAKDOWN OR NONUSE OF THE EQUIPMENT.

**DESCRIPTION OF EQUIPMENT:**
Two (2) New 2018 Isuzu FTR trucks with 30' body VINs 54DK6S166JSG00161 & 54DK6S168JSG00162

DEBTOR:    PACIFIC FOODS & DISTRIBUTION INC.

By: _____    DATED:    08/08/2017
    JAMES H LOFTUS, JR., President

By: _____    DATED:    08/08/2017

### SPECIAL PRE-DELIVERY ACCEPTANCE

By signing below, the Debtor hereby acknowledges and agrees that the Creditor is making advance payment to the vendor or seller on the equipment described above. The Debtor further acknowledges and agrees that by doing this the Debtor is accepting delivery of the equipment in advance of it being shipped. The Debtor is fully responsible for all terms and conditions of this Agreement.

By: _____    DATED:    08/08/2017
    JAMES H LOFTUS, JR., President

## PAY PROCEEDS DIRECTION

To: RWC International, LTD

RE: Equipment Finance Agreement between the undersigned and RWC International, LTD

You are hereby irrevocably instructed to disburse from the proceeds of the agreement evidenced by the above-referenced instruments the respective amounts to the respective payees designated below.

| AMOUNT | PAYEE-NAME AND ADDRESS |
|---|---|
| $153,919.36 | RWC Group<br>6320 E Florence Ave<br>Huntington Park, CA 90255 |
| $0.00 | |
| $0.00 | |
| $0.00 | |

Disbursement by you in accordance with the foregoing instructions shall be and constitute payment and delivery to and receipt by us of any and all of such proceeds.

DEBTOR: PACIFIC FOODS & DISTRIBUTION, INC.

Signature

By:
JAMES H LOFTUS, JR.
(Printed Name)

President
Title

08/08/2017
Date

EFA 2-8-2016

Page 8 of 9

EXHIBIT 1, Page 19 of 29

Initial

| To: RWC International, LTD | Date: 08/08/2017 |
| 13123 48th Ave S. | |
| Seattle, Washington 98168 | |

## NOTICE TO PROVIDE INSURANCE

RWC International, LTD:

This is to advise you that, in connection with our acquisition of equipment financed with you, the following Insurance Agent has been instructed to have you designated as LOSS PAYEE, and provide you with comprehensive liability and property damage insurance coverage equal to or greater than the purchase price of the equipment.

Agent Name:

Insurance Company:

Address:

Telephone/FAX:

Our agent will forward to you, immediately upon delivery of the equipment, loss payee endorsement, proof of your comprehensive liability and property damage insurance, and/or insurance policies, deductibles (not to exceed $1,000), or the certificate of insurance or notice of impending coverage.

Equipment Description:

Two (2) New 2018 Isuzu FTR trucks with 30' body VINs 54DK6S166JSG00161 & 54DK6S168JSG00162

Debtor:   PACIFIC FOODS & DISTRIBUTION, INC.

By:

JAMES H LOFTUS, JR.,   President

EFA 2-8-2016

Page 9 of 9

EXHIBIT 1, Page 20 of 24

Initial

## HIGHWAY TRANSPORTATION EQUIPMENT ADDENDUM

This Highway Transportation Equipment Addendum ("Addendum") to that certain Equipment Finance Agreement (hereinafter referred to as "Agreement") is entered into by and between the undersigned parties.

In that highway transportation equipment is being financed under the Agreement, parties agree that the terms of the Agreement shall be supplemented and modified by this Addendum . Except as otherwise specified in this Addendum, all terms and conditions of the Agreement will be and remain in full force and effect. Capitalized terms not otherwise defined herein shall have the meaning given to such terms in the Agreement

(1) Registration and Permits. Debtor shall, at its sole cost and expense, obtain and continually maintain all registrations, plates, permits and licenses necessary for use of the Equipment by Debtor in carrying on its business.

(2) Taxes, Levies and Fines. In addition to the costs of titling and registration, Debtor shall pay all taxes, levies, fines and penalties arising out of or in connection with the ownership, use or possession of the Equipment.

(3) Records of Location. Whenever any equipment is not located at the garage facilities of Debtor, Debtor shall keep and maintain record of the location of such Equipment at all times. Debtor will report this location to Creditor upon written request by Creditor. Failure to do so shall constitute a breach of the Agreement, which shall default shall be governed by the terms and conditions specified in paragraph concerning Default and Remedies of the Agreement.

(4) Good Working Order. Debtor shall, at its sole cost and expense, keep and continuously maintain all equipment in good working condition throughout the term of the Agreement.

(5) Insurance. Debtor shall procure and maintain in full force and effect at all times, at Debtor's expense, with a responsible insurance company acceptable to Creditor, insurance coverage for the maximum insurable value of the equipment and insuring Debtor and Creditor, as their interests may appear, against liability for death, bodily injury and property damage resulting from ownership, maintenance, use or operation of the equipment, with minimum coverage per occurrence as follows:

Minimum limits for each vehicle to be maintained by Debtor:

| | |
|---|---|
| Bodily injury liability per individual | $300,000.00 |
| Bodily injury liability per accident | $300,000.00 |
| Property damage liability | $250,000.00 |
| Fire, Theft and Comprehensive | Full Value |
| Collision Value Deductible | (Deductible part to be paid by Debtor) |

Such continuous insurance coverage shall be provided for the period from delivery of the first item of equipment to Debtor to the date of termination of this Agreement shall provide Creditor copies of the insurance policies or the maintenance of such insurance. Cashmere Valley Bank must be named on the policy as "Loss Payee".

STATUTORY NOTICE: ORAL AGREEMENTS OF ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.

Creditor:
RWC International, LTD

By:

Dated: 08/08/2017

Debtor:
PACIFIC FOODS &
DISTRIBUTION, INC.

By:
JAMES H. LOFTUS, JR.

Dated: 08/08/2017

EXHIBIT 1, Page 21 of 29



# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 54DK6S166JSG00161 | 2018 | ISU | VN | V | 79184B2 | 08-31-2018 |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 14100 | | | 2 | CA | 08-23-2017 |

| Full Name of Owner(s) | Vehicle Brand(s) | Liens(s) |
|---|---|---|
| PACIFIC FOODS/DISTRIBUTION INC<br>3431 CARRIAGE DRIVE<br>SANTA ANA, CA 927040000 | | CASHMERE VALLEY BK<br>124 E PENNY RD STE 202<br>WENATCHEE, WA 988010000 |

Lien Date:
ELT Number: A06
LTN: 70152723-1

Odometer Brand(s)
ACTUAL

\* Information has been supplied by the lienholder, not the state titling agency.

Document ID: M6XFRHVKTJ

## THIS IS NOT A TITLE
This is an official Premier eTitleLien® Report
generated by a customer of Decision Dynamics, Inc.



EXHIBIT 2, Page 22 of 29



# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 54DK6S166JSG00161 | 2018 | ISU | VN | V | 79184B2 | 08-31-2018 |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 14100 | | | 2 | CA | 08-23-2017 |

| Full Name of Owner(s) | Vehicle Brand(s) | Liens(s) |
|---|---|---|
| PACIFIC FOODS/DISTRIBUTION INC<br>3431 CARRIAGE DRIVE<br>SANTA ANA, CA 927040000 | | CASHMERE VALLEY BK<br>124 E PENNY RD STE 202<br>WENATCHEE, WA 988010000 |
| | | Lien Date:<br>ELT Number: A06<br>LTN: 70152723-1 |
| | Odometer Brand(s)<br>ACTUAL | |

* Information has been supplied by the lienholder, not the state titling agency.

Document ID: M6XFRHVKTJ

## THIS IS NOT A TITLE
This is an official Premier eTitleLien® Report
generated by a customer of Decision Dynamics, Inc.



DECISION DYNAMICS, INC.

EXHIBIT 2 , Page 23 of 29

## CERTIFICATE OF ASSIGNMENT

In consideration of payment of the Acquisition Amount specified, the undersigned Assignor hereby transfers, assigns and conveys to Cashmere Valley Bank ("Assignee"), all of Assignor's right, title and interest in and to the Equipment Financing Agreement described herein and all Related Documentation, and a security interest in the Equipment described therein, in accordance with the terms and conditions of that Agreement for Assignment of Stream of Payments on Equipment Finance Agreements between Assignee and Assignor, dated 08/08/2017 together with any and all rights and remedies of Assignor against any other party who may be held liable in the event of a default by the Debtor, including with limitation any right of recourse against the vendor, supplier or any prior holder of the Equipment Financing Agreement, whether for breach or representation or warranty of otherwise, and against any surety, guarantor or other obligated party.

**CREDITOR: RWC International, LTD**

**DEBTOR: PACIFIC FOODS & DISTRIBUTION, INC.**

**DESCRIPTION OF EQUIPMENT:**
    Two (2) New 2018 Isuzu FTR trucks with 30' body VINs 54DK6S166JSG00161 & 54DK6S168JSG00162

**ADVANCE PAYMENTS AND DEPOSITS: $0.00**

**REMAINING PAYMENT SCHEDULE: 60 @ $2,904.45**

**ACQUISITION AMOUNT: $153,919.36**

Dated:    08/08/2017

Assignee: CASHMERE VALLEY BANK
By:

Assignor: RWC International, LTD
By:

EXHIBIT 3 , Page 24 of 29

| Debtor | **Pacific Foods, Inc.** | | Case number *(if known)* |
|---|---|---|---|
| | Name | | |

☐ Yes Fill in the information below.

<table>
<tr><td style="background:black;color:white">Part 7:</td><td colspan="4">Office furniture, fixtures, and equipment; and collectibles</td></tr>
</table>

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☐ No. Go to Part 8.

■ Yes Fill in the information below.

| | General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 39. | **Office furniture**<br>**Various desks, filing cabinets, office chairs** | $0.00 | N/A | $15,000.00 |
| 40. | **Office fixtures**<br>**Bread racks and other miscellaneous storage racks** | $0.00 | | $1,000.00 |
| 41. | **Office equipment, including all computer equipment and communication systems equipment and software**<br>**Computers and Software** | $0.00 | | $10,000.00 |
| 42. | **Collectibles** *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |
| 43. | **Total of Part 7.**<br>Add lines 39 through 42. Copy the total to line 86. | | | $26,000.00 |

44. **Is a depreciation schedule available for any of the property listed in Part 7?**

■ No

☐ Yes

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**

■ No

☐ Yes

<table>
<tr><td style="background:black;color:white">Part 8:</td><td colspan="4">Machinery, equipment, and vehicles</td></tr>
</table>

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

☐ No. Go to Part 9.

■ Yes Fill in the information below.

| | General description<br>Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 47. | **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| 47.1. | **2018 Isuzu FTR Chassis - Diesel** | $0.00 | | $37,000.00 |
| 47.2. | **2014 Nissal PF40LP forklift** | $0.00 | | $15,500.00 |

EXHIBIT 4, Page 25 of 29

| Debtor | Pacific Foods, Inc. | | Case number *(If known)* | |
| | Name | | | |

| | | | | |
|---|---|---|---|---|
| 47.3. | 2007 Mitsubishi FM260 | $0.00 | | $26,100.00 |
| 47.4. | 2015 Freightliner Cab | $0.00 | Comparable sale | $65,000.00 |
| 47.5. | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.6. | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.7. | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.8. | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.9. | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.10 | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.11 | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.12 | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.13 | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.14 | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.15 | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.16 | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.17 | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.18 | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.19 | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.20 | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.21 | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

 EXHIBIT 4 , Page 26 of 29

| Debtor | Pacific Foods, Inc. | | Case number *(if known)* | |
| | Name | | | |

| 47.22 | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.23 | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.24 | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.25 | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.26 | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.27 | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.28 | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.29 | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.30 | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.31 | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.32 | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.33 | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.34 | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.35 | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.36 | 2007 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.37 | 2008 Mitsubishi Fuso FM-260 | $0.00 | Comparable sale | $21,000.00 |
| 47.38 | 2017 Isuzu FTR Chassis - Diesel | $0.00 | Comparable sale | $40,000.00 |



EXHIBIT 4 , Page 27 of 29

Debtor **Pacific Foods, Inc.**                                      Case number *(If known)*
Name

| | | | | |
|---|---|---|---|---|
| 47.39 | **2017 Isuzu FTR Chassis - Diesel** | $0.00 | Comparable sale | $40,000.00 |
| 47.40 | **2017 Isuzu FTR Chassis - Diesel** | $0.00 | Comparable sale | $40,000.00 |
| 47.41 | **2017 Isuzu FTR Chassis - Diesel** | $0.00 | Comparable sale | $40,000.00 |
| 47.42 | **1998 Great Dane dry van trailer** | $0.00 | Comparable sale | $4,500.00 |
| 47.43 | **1998 Great Dane dry van trailer** | $0.00 | Comparable sale | $4,500.00 |
| 47.44 | **1998 Great Dane dry van trailer** | $0.00 | Comparable sale | $4,500.00 |
| 47.45 | **1998 Great Dane dry van trailer** | $0.00 | Comparable sale | $4,500.00 |
| 47.46 | **1998 Trailmobile Dry Trailer** | $0.00 | Comparable sale | $3,100.00 |

48. **Watercraft, trailers, motors, and related accessories** *Examples:* Boats, trailers, motors,
floating homes, personal watercraft, and fishing vessels

49. **Aircraft and accessories**

50. **Other machinery, fixtures, and equipment (excluding farm
machinery and equipment)**

51. **Total of Part 8.**                                                    | **$1,017,700.00** |
Add lines 47 through 50.  Copy the total to line 87.

52. **Is a depreciation schedule available for any of the property listed in Part 8?**
☑ No
☐ Yes

53. **Has any of the property listed in Part 8 been appraised by a professional within the last year?**
☑ No
☐ Yes

**Part 9:    Real property**
**54. Does the debtor own or lease any real property?**

☑ No.  Go to Part 10.
☐ Yes Fill in the information below.

**Part 10:    Intangibles and intellectual property**
**59. Does the debtor have any interests in intangibles or intellectual property?**

☑ No.  Go to Part 11.
☐ Yes Fill in the information below.

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com                                Best Case Bankruptcy

EXHIBIT 4 , Page 28 of 29

**Fill in this information to identify the case:**

Debtor name    **Pacific Foods, Inc.**

United States Bankruptcy Court for the:    CENTRAL DISTRICT OF CALIFORNIA

Case number (if known)

☐ Check if this is an
amended filing

Official Form 206D

# Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible.

1. **Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:**    **List Creditors Who Have Secured Claims**

| 2. List in alphabetical order all creditors who have secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. | | Column A<br>Amount of claim<br><br>Do not deduct the value<br>of collateral. | Column B<br>Value of collateral<br>that supports this<br>claim |
|---|---|---|---|
| **2.1** **Cashmere Valley Bank**<br>Creditor's Name<br>**124 E penny Rd**<br>**suite 202**<br>**Wenatchee, WA 98801**<br>Creditor's mailing address<br><br><br>Creditor's email address, if known | Describe debtor's property that is subject to a lien<br><br><br><br><br>Describe the lien<br>**Purchase Money Security**<br>Is the creditor an insider or related party?<br>■ No<br>☐ Yes<br>Is anyone else liable on this claim? | $128,466.57 | $0.00 |
| Date debt was incurred<br>**2018**<br>Last 4 digits of account number<br>**2723**<br>Do multiple creditors have an<br>interest in the same property?<br>■ No<br>☐ Yes. Specify each creditor,<br>including this creditor and its relative<br>priority. | ■ No<br>☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)<br><br>As of the petition filing date, the claim is:<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| **2.2** **Daimler Truck Financial**<br>Creditor's Name<br><br><br>Creditor's mailing address<br><br><br>Creditor's email address, if known | Describe debtor's property that is subject to a lien<br>**2015 Freightliner Cab**<br><br><br>Describe the lien<br>**Purchase Money Security**<br>Is the creditor an insider or related party?<br>■ No<br>☐ Yes<br>Is anyone else liable on this claim? | $45,741.43 | $65,000.00 |
| Date debt was incurred<br>**4/13/2015**<br>Last 4 digits of account number<br>**4001**<br>Do multiple creditors have an<br>interest in the same property? | ■ No<br>☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)<br><br>As of the petition filing date, the claim is:<br>Check all that apply | | |


EXHIBIT 4, Page 29 of 29